[Cite as *State v. Downing*, 2020-Ohio-3984.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-72 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-163 |
| | : | |
| MICHAEL L. DOWNING | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of August, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
    Attorney for Plaintiff-Appellee

ERIK R. BLAINE, Atty. Reg. No. 0080726, 130 West Second Street, Suite 310, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Michael L. Downing appeals his conviction and sentence for one count of aggravated possession of drugs, in violation of R.C. 2925.11(A), a felony of the second degree; possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the second degree; obstructing official business, in violation of R.C. 2921.31(A), a misdemeanor of the second degree; falsification, in violation of R.C. 2921.13(A)(3), a misdemeanor of the first degree; and two forfeiture specifications regarding illegal drugs and money seized by the police during Downing's arrest.   Downing filed a timely notice of appeal with this Court on November 11, 2019.

{¶ 2} The incident which formed the basis for the charges occurred on December 15, 2018, when Fairborn police officers were dispatched to investigate a suspicious vehicle located in the parking lot of a First Watch restaurant on Colonel Glenn Highway. As the officers approached the vehicle, a man (later identified as Downing) exited from the passenger side of the vehicle.   The officers asked Downing for his name and social security number (SSN).   Downing provided the officers with a false name and claimed that he could not remember his SSN.   When asked what he was doing in the parking lot, Downing stated that he was there to help someone move.   Downing then took off running in the direction of a nearby Texas Roadhouse restaurant.   Shortly thereafter, the officers located Downing hiding in a dumpster behind the restaurant.   While being pulled from the dumpster, Downing dropped a black pouch containing 3 plastic baggies of what was later identified as approximately 67 grams of methamphetamine and 13 grams of fentanyl. The police also seized $106 in cash from Downing.   Downing was arrested and taken into custody.

{¶ 3} On March 22, 2019, Downing was indicted for the following offenses: Count I, aggravated trafficking in drugs; Count II, aggravated possession of drugs; Count III, aggravated trafficking in drugs; Count IV, possession of a fentanyl-related compound; Count V, obstructing official business; and Count VI, falsification. The charges were also accompanied by two forfeiture specifications regarding illegal drugs and money seized during Downing's arrest.

{¶ 4} At his arraignment on June 7, 2019, Downing stood mute, and the trial court entered a plea of not guilty on his behalf. On August 16, 2019, Downing pled guilty to the following offenses: Count II, aggravated possession of drugs; Count IV, possession of a fentanyl-related compound; Count V, obstructing official business; and Count VI, falsification. Downing's guilty pleas also required him to forfeit the illegal drugs and money seized by the police during his arrest. In return for Downing's guilty pleas, the State agreed to dismiss Counts I and III. The State also agreed to recommend a six-year mandatory prison term and a minimum mandatory fine. After accepting Downing's guilty pleas, the trial court ordered adult probation to complete a presentence investigation report (PSI). Downing, however, failed to appear for his PSI interview, and the trial court issued a warrant for his arrest on September 6, 2019.[1] A PSI was completed without Downing's participation.

{¶ 5} On October 10, 2019, the trial court sentenced Downing as follows: Count II, aggravated possession of drugs, eight years, a mandatory term pursuant to R.C. 2929.13(F); Count IV possession of a fentanyl-related compound, eight years, also a

---

[1] Although the record is unclear regarding the date Downing was apprehended, he was taken back into custody shortly after the warrant was issued and held at the Clark County Jail until October 10, 2019, when he was transported to Greene County for sentencing.

mandatory term pursuant to R.C. 2929.13(F); Count V, obstructing official business, zero days in jail; and Count VI, falsification, also zero days in jail. The trial court ordered that Counts II and IV be served concurrently for an aggregate sentence of eight years in prison. The trial court also imposed fines and costs, and ordered Downing to pay restitution. The trial court's judgment entry of conviction was filed on October 11, 2019.

{¶ 6} It is from this judgment that Downing now appeals.

{¶ 7} Downing's first assignment of error is as follows:

THE TRIAL COURT ERRED BY FAILING TO CONTINUE SENTENCING

TO ENSURE THE COMPLETION OF A PSI.

{¶ 8} In his first assignment, Downing contends that the trial court erred when it sentenced him without a "complete" PSI based upon the fact that Downing failed to cooperate and report to adult probation for the interview. However, Downing did not file a motion to continue the sentencing hearing in order to complete the PSI, nor did he object at the sentencing hearing to proceeding without a completed PSI. Downing has therefore waived all error except plain error. *State v. Satterfield*, 2017-Ohio-5616, 94 N.E.3d 171, ¶ 31 (2d Dist.); *State v. DeWitt*, 2d Dist. Montgomery No. 24437, 2012-Ohio-635, ¶ 28. To prevail under the plain error standard, an appellant must demonstrate both that there was an obvious error in the proceedings and that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 61-62.

{¶ 9} Crim.R. 32.2 states that "[i]n felony cases the court shall * * * order a presentence investigation and report before imposing community control sanctions or granting probation." *State v. Amos*, 140 Ohio St.3d 238, 2014-Ohio-3160, 17 N.E.3d 528,

¶ 14. "[T]he plain text of Crim.R. 32.2 and R.C. 2951.03(A)(1) also places an unavoidable duty on the trial court to obtain a presentence investigation report in every felony case in which a prison sentence is not imposed." *Id.* at ¶ 15. Conversely, we have held that Crim.R. 32.2 "requires a presentence investigation only as a prerequisite to granting probation, and not as a prerequisite to all sentencing proceedings." *State v. Garrison*, 123 Ohio App.3d 11, 16, 702 N.E.2d 1222 (2d Dist.1997). In fact, we have further held that a trial court does not need to order a presentence report in a felony case when probation is not granted. *State v. Talley*, 2d Dist. Montgomery No. 136839, 1993 WL 541633, *11 (Dec. 29, 1993), citing *State v. Cyrus*, 63 Ohio St.3d 164,166, 586 N.E.2d 94 (1992).

{¶ 10} In this case, Downing was provided an opportunity to participate in the creation of his PSI, but he failed to do so. At the sentencing hearing, Downing informed the trial court that he did not attend the PSI interview because he was using drugs again. Additionally, Downing did not object and/or file a motion to continue the proceedings so that he could participate in the PSI process. The record also establishes that the trial court thoroughly addressed the statutory factors set forth in R.C. 2929.12 at Downing's sentencing hearing. Furthermore, the PSI reviewed by the trial court contained an official version of Downing's offenses in the instant case drafted by the arresting officer. The PSI indicated that, in Downing's case, recidivism was more likely. Downing's PSI also indicated that he was listed as a "security threat group" with the Ohio Department of Rehabilitation and Correction, and that he had several Ku Klux Klan tattoos. The PSI also stated that Downing had six prior adult felony convictions: two convictions for aggravated burglary (five years in prison); one conviction for burglary (11 months in

prison); one conviction for grand theft (one year in prison); one conviction for illegal manufacturing of drugs (four years in prison); and one conviction for failure to comply with the order or signal of a police officer (one year in prison). Downing also had two active warrants in Miami County and Clark County at the time that the PSI was prepared. Finally, the PSI indicated that Downing had a long history of rule infractions while incarcerated (approximately 17 violations), including defying orders from prison staff, stealing property, possession of and selling contraband inside the prison, and refusal to carry out work assignments at the prison.

{¶ 11} Upon review, we find that Downing has failed to establish that his lack of participation in the PSI process affected the trial court's decision to sentence him to an aggregate eight-year sentence when the prison term was mandatory. Downing was sentenced within the applicable statutory guidelines. Significantly, since Downing was not eligible for community control based upon the nature of his offenses, the trial court was not required by Crim.R. 32.2 to order a PSI before sentencing Downing. Accordingly, we conclude that the trial court did not err, plainly or otherwise, when it failed to sua sponte continue Downing's sentencing hearing in order to provide him with a second opportunity to participate in the PSI process.

{¶ 12} Downing's first assignment of error is overruled.

{¶ 13} Downing's second assignment of error is as follows:

THE TRIAL COURT ERRED BY NOT REVIEWING CONSTITUTIONAL
RIGHTS WITH MR. DOWNING.

{¶ 14} In his second assignment of error, Downing argues that the trial court erred by failing to individually review his constitutional rights with him during the Crim.R. 11

colloquy at his plea hearing. Specifically, Downing argues that "the trial court failed to advise Mr. Downing of his Constitutional Rights individually * * * [and] * * * only asked Mr. Downing if he understood after reading all of his rights, which does not comply with the letter and spirit of Crim.R. 11." Appellant's Brief, p. 9. Significantly, Downing has failed to articulate which of his constitutional rights he believes was violated by the trial court at the plea hearing.

{¶ 15} "An appellate court must determine whether the record affirmatively demonstrates that a defendant's plea was knowing, intelligent, and voluntary[.]" *State v. Russell*, 2d Dist. Montgomery No. 25132, 2012-Ohio-6051, ¶ 7, citing *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). If a defendant's plea is not knowing, intelligent, and voluntary, it "has been obtained in violation of due process and is void." *Id.* "In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim.R. 11(C)." *State v. Brown*, 2d Dist. Montgomery Nos. 24520, 24705, 2012-Ohio-199, ¶ 13.

{¶ 16} "Crim.R. 11(C)(2)(c) requires that the defendant be advised of the right to a jury trial, the right to confront one's accusers, the privilege against compulsory self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt." *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 62, ¶ 19. A trial court must strictly comply with Crim.R. 11 as it pertains to the waiver of these constitutional rights. *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 15, citing *Veney* at ¶ 18. "A guilty plea is constitutionally infirm when the defendant is not informed in a reasonable manner that his plea waives those rights." *State v. Eggers*, 2d Dist. Clark No. 2011-CA-48, 2013-Ohio-

3174, ¶ 11, citing *State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981).

{¶ 17} "Failure to use the exact language contained in Crim.R. 11(C), in informing a criminal defendant of his constitutional right to a trial and the constitutional rights related to such trial, including the right to trial by jury, is not grounds for vacating a plea as long as the record shows that the trial court explained these rights in a manner reasonably intelligible to that defendant." (Citation omitted.) *Ballard* at paragraph two of the syllabus. Therefore, the Supreme Court of Ohio has "recognized that a trial court can still convey the requisite information on constitutional rights to the defendant even when the court does not provide a word-for-word recitation of the criminal rule, so long as the trial court actually explains the rights to the defendant." *Veney* at ¶ 27. Moreover, "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *Barker* at ¶ 25.

{¶ 18} For example, in *Ballard*, the Ohio Supreme Court upheld an appellant's guilty plea even though the court failed to specifically mention the right to a jury trial by name, but rather informed the appellant that "neither judge nor jury could draw any inference if the appellant refused to testify" and then stated that appellant "was entitled to a fair and impartial trial under law." *Ballard* at 481. The Supreme Court concluded that, taken together, these advisements were sufficient to inform the appellant of his right to a jury trial. *Id.*

{¶ 19} The following exchange occurred between Downing and the trial court during the plea hearing:

The Court: All right. Your age, Mr. Downing.

Downing: Forty-five.

Q: You're able to read, write, and understand the English language?

A: Yes.

Q: For both of you,[2] in the past 24 hours have you had any drugs, alcohol, medicine, pills, or related-type substances?

A: No.

Q: As you sit here right now are you alert, clear of mind, not under the influence of any substances, and totally capable of understanding what we are doing here today?

A: Yes.

Q: Now, have you and your counsel together discussed the nature of the charges you're facing in your respective cases?

A: Yes.

Q: And do you understand what these offenses accuse you of doing?

A: Yes.

Q: Are you also aware of the facts that are behind the charges that your counsel received from the State of Ohio in the discovery package, which includes the police reports?

A: Yes.

Q: And based upon those facts, have you and your counsel discussed the topic of possible legal defenses, if any, that may apply in your

---

[2] At the plea hearing, Downing was joined by another defendant who was also entering a guilty plea to other charges in a separate case on the same date. In order to avoid confusion, the co-defendant's responses will be omitted from the above recitation.

case?

A: Yes.

Q: Have you told your attorney everything that you think your counsel needs to know in order to fully and properly represent you?

A: Yes.

Q: Has your attorney answered your questions?

A: Yes.

Q: And are you satisfied with the legal advice you've received so far?

A: Yes.

Q: Now, before you made your decision to go forward with an offer of a change of plea to guilty, do you fully appreciate you have a Constitutional Right to have your case resolved with a verdict of either guilty or not guilty in a speedy and public trial to the Jury?

A: Yes.

Q: And I take it you've chosen not to pursue that option?

A: Yes.

Q: Anyone cause you to feel rushed in any way in coming to your decision to plead guilty here or anyone left you with the impression you have no choice but to plead guilty?

A: No.

* * *

Q: Okay. Based upon what you've told me, can the record reflect that your decision to go forward today is a decision you are making on your

own, it is a free choice, from more than one choice, you're doing it voluntarily without any improper influence or duress from any person or source?

A: Right.

* * *

Q: Now, when you end the case in this manner, you'll be giving up important Constitutional Rights.

I want to make sure you understand what those rights are and confirm you're willing to give them up.

The rights you give up are the right to a speedy and public trial to a Jury. That's a Constitutional Right as well as the rest of these:

The right of compulsory process, to have witnesses come to trial to testify in your behalf.

The right to require the State to prove you guilty beyond a reasonable doubt. If they don't do that, the verdict's not guilty.

The opportunity to cross-examine witnesses by having your attorney ask questions of them.

And the right not to be compelled to be a witness against yourself at trial, which means if you don't want to testify, no one can force you to testify or use that decision against you in any way.

My next question is: Do you understand these rights?

A: Yes.

Plea Hearing Tr. p. 5-10.

{¶ 20} The waiver and plea form signed by Downing stated in pertinent part:

"I am advised that by pleading <u>GUILTY</u> I am waiving my right to a jury trial, to confront witnesses against me, to have compulsory process for obtaining witnesses in my favor, to require the State of Ohio to prove my guilt beyond a reasonable doubt at a trial at which I cannot be compelled to testify against myself and I voluntarily give up these rights by pleading <u>GUILTY</u>.

{¶ 21} In *State v. Plato*, 2d Dist. Champaign No. 2003-CA-26, 2004-Ohio-5782, this Court found that, although the trial court did not stop after each right when it inquired of the defendant whether he was giving up his rights, the court specifically addressed each of the constitutional rights listed in Crim.R. 11. *Id.* at ¶ 32. After reciting the rights listed in Crim.R. 11, the court asked the defendant if he understood that by pleading guilty, he would be giving up those rights. *Id.* The defendant indicated that he did understand the rights he was waiving, and he also signed a plea form almost identical to the form in the instant case wherein his constitutional rights were reiterated. *Id.* The defendant in *Plato* acknowledged in open court that he was giving up those rights and entered a plea of guilty, which the trial court accepted. *Id.* Upon review, we concluded that the defendant voluntarily, knowingly, and intelligently entered into a plea agreement in which he knew he was waiving his constitutional rights. *Id.*

{¶ 22} Similar to the facts in *Plato*, the trial court did not stop after each right when it inquired of Downing whether he was willing to give up his constitutional rights. However, the trial court specifically addressed each of the constitutional rights listed in Crim.R. 11, and asked Downing if he understood that by pleading guilty, he would be giving up those rights. Downing stated that he did understand the rights he was waiving, and he also signed a plea form wherein his constitutional rights were reiterated. We

further note that Downing stated at the hearing that he was entering his guilty plea of his own free will. Based on the facts before us, we conclude that the trial court sufficiently followed the procedure set forth in Crim.R. 11(C)(2)(c) when it informed Downing of the constitutional rights he would be waiving as a result of pleading guilty.

{¶ 23} Downing's second assignment of error is overruled.

{¶ 24} Downing's third assignment of error is as follows:

THE TRIAL ERRED BY FAILING TO CLEARLY ADVISE MR. DOWNING THAT A GUILTY PLEA WOULD RESULT IN A FINDING OF GUILT AND A CONVICTION.

{¶ 25} In his third assignment, Downing contends that the trial court erred when it failed to inform him at the plea hearing that his guilty plea was a "complete admission of guilt" rather than an "admission of guilt," as the trial court stated during its Crim.R. 11 colloquy.

{¶ 26} At Downing's plea hearing, the following exchange occurred:

Q: And you understand a plea of guilty is an admission of guilt, and I may draw the conclusion you are indeed guilty?

A: Yes.

Plea Hearing Tr. p. 9.

{¶ 27} The Supreme Court of Ohio has urged trial courts to comply literally with Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. As previously stated, the trial court must comply strictly with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Id.* at ¶ 31. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need comply

only substantially with those requirements. *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 11. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he [or she] is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

> But "[w]hen the trial judge does not *substantially* comply with Crim.R. 11 in regard to a non-constitutional right, reviewing courts must determine whether the trial court *partially* complied or failed to comply with the rule." (Emphasis sic.) *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32. "If the trial judge partially complied, e.g., by mentioning mandatory post-release control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." *Id.* But if the trial court completely failed to comply with the rule, the plea must be vacated. *Id.* Complete failure " 'to comply with the rule does not implicate an analysis of prejudice.' " *Id.*, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

(Emphasis sic.) *Bishop* at ¶ 19. *See also State v. McGlinch*, 2019-Ohio-1380, 135 N.E.3d 406, ¶ 28 (2d Dist.).

{¶ 28} In *State v. Craaybeek*, 2d Dist. Greene No. 2004-CA-39, 2005-Ohio-437, the defendant argued that her suspension for driving while under suspension "should be set aside because the trial court failed to tell her that her guilty plea was a complete admission of her guilt as required by Traf.R. 10(D)." *Id.* at ¶ 2. This Court determined as follows:

Recently the Ohio Supreme Court held that a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial. *State v. Griggs*, 103 Ohio St.3d 85, 87, 814 N.E.2d 51, 2004-Ohio-4415. Justice O'Connor wrote as follows:

"The right to be informed that a guilty plea is a complete admission of guilt is non-constitutional and therefore is subject to review under a standard of substantial compliance. *State v. Nero*, 56 Ohio St.3d at 107, 564 N.E.2d 474. Though failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption that it was entered involuntarily and unknowingly, failure to comply with non-constitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice. *Id.* at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id.* Under the substantial-compliance standard, we review the totality of circumstances surrounding Grigg's plea and determine whether he subjectively understood that a guilty plea is a complete admission of guilt."

*Id.* at ¶ 14-15.

{¶ 29} In the instant case, it is clear that Downing executed a plea waiver in open court. Downing affirmatively indicated that he wanted to accept the plea bargain, namely

to enter guilty pleas to Counts II, IV, V, and VI in exchange for the dismissal of Counts I and III. The court addressed the charges and their penalties, and Downing was afforded additional time to confer with counsel. The trial court advised him that, in the event he chose to plead not guilty, the case would proceed to trial on the entire indictment. As previously stated, the trial court informed Downing that "a plea of guilty is an admission of guilt," omitting the word "complete" from its colloquy. Nevertheless, on the record before us, we conclude that prejudice is not shown, and the trial court substantially complied with Crim.R. 11(C) insofar as Downing was aware of the effect of his guilty pleas.

{¶ 30} Downing's third assignment of error is overruled.

{¶ 31} Downing's fourth and final assignment of error is as follows:

THE TRIAL COURT ERRED BY FAILING TO CLEARLY ADVISE MR. DOWNING THAT THE COURT WAS NOT BOUND BY THE STATE'S SIX-YEAR SENTENCING RECOMMENDATION.

{¶ 32} "Crim.R. 11(C)(2)(a) provides that, before accepting a guilty plea, a court must '[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved * * *.' " *State v. Jones*, 2d Dist. Montgomery No. 24772, 2013-Ohio-119, ¶ 6.

{¶ 33} As previously stated, when non-constitutional rights are at issue, a defendant who challenges his plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15.

{¶ 34} A trial court is not bound to accept the State's recommended sentence in a plea agreement. *Akron v. Ragsdale*, 61 Ohio App.2d 107, 109, 399 N.E.2d 119 (9th Dist.1978). The better practice, not followed here, is for the trial court to specifically forewarn the defendant that it is not bound by the sentencing recommendation. *State v. Walker*, 6th Dist. Lucas No. L-98-1210, 1999 WL 278120, *4 (May 7, 1999); *see State v. Darmour*, 38 Ohio App.3d 160, 529 N.E.2d 208 (8th Dist.1987), syllabus. A trial court does not err in imposing a sentence greater than that recommended by the State under a negotiated plea agreement where "the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor." *State ex rel. Duran v. Kelse*y, 106 Ohio St.3d 58, 2005-Ohio-3674, 831 N.E.2d 430, ¶ 6, quoting *State v. Buchanan*, 154 Ohio App.3d 250, 2003-Ohio-4772, 796 N.E.2d 1003, ¶ 13 (5th Dist.). This standard can be met without the court's specifically telling the defendant that it is not bound by the State's recommendation as to sentence. *State v. Dixon*, 2d Dist. Clark No. 03CA0045, 2004-Ohio-4262, ¶ 11-12.

{¶ 35} Downing claims that he did not knowingly, intelligently, and voluntarily enter his plea, because the trial court imposed a longer sentence than recommended by the State in accordance with the plea agreement. Downing argues that the trial court did not clearly inform him that he could receive more than six years in prison, the sentence that the State agreed to recommend.

{¶ 36} Initially, we note that Downing and his counsel were provided with the written notification and waiver so that they could review the plea agreement prior to the plea hearing. The written waiver stated in pertinent part:

"I understand the maximum punishment provided by law is **16 years of**

**imprisonment and 270 days local jail** of which **2 years up to 16 years** is a **mandatory prison term** which cannot be reduced by judicial release, earned credit, or furlough * * * [.]"

Rule 11 Notification and Waiver.

{¶ 37} Additionally, the actual plea agreement signed by the parties stated that "[t]he State *recommends* a 6 year mandatory prison term." Nowhere in the plea agreement did the State *guarantee* a sentence of six years, nor did the plea agreement contain any mention of a stipulated sentence. Additionally, at the plea hearing, the following exchange occurred between the trial court and Downing:

> Trial Court: All right. Do you understand, Mr. Downing, the maximum punishment you could receive for all of these offenses would be – as far as the felonies are concerned, a maximum of 16 years of imprisonment, and 270 days of local jail for the misdemeanors, and the sentence of imprisonment, a minimum of two to a maximum of six years would be a mandatory term.
>
> In other words, for those two counts, you're not eligible for Community Control; do you understand that?
>
> Downing: *Yes*.

(Emphasis added.) Plea Hearing Tr. 13.

{¶ 38} Later on during the plea hearing, the following exchange occurred:

> Trial Court: Now, Mr. Downing, in your [plea] agreement the State says, the Defendant will plead guilty as charged to Counts 2, 4, 5, and 6 in the indictment. The State will dismiss Counts 1 and 3, which is trafficking

in drugs, a felony of the second degree, and trafficking in drugs, a felony of the second degree.

The Defendant agrees to the forfeiture specifications – that's the drugs – and the $106.00.

*State recommends a six-year mandatory prison term.* If the Defendant is not found to be indigent, the State recommends the minimum mandatory fine.

What I just read, is that your understanding of the position of the prosecutor –

Downing: *Yes.*

Trial Court: -- and the police in your case?

Downing: *Yes.*

Trial Court: Are there any other deals or conditions you think are available to you from the State of Ohio that I have not read?

Downing: *No.*

Trial Court: Has counsel made any promises or representations to your client other than what I read on the record?

Defense Counsel: *No, Your Honor.*

* * *

Trial Court: * * *  Mr. Downing, to be candid with you, because Counts 2 and 4 are mandatory prison, there's a, a likelihood that I will not be granting Community Control in Counts 5 and 6, the misdemeanors; and so it's likely, I think, it's fair to say you'll be receiving a prison sentence.

*The only question is, what will be the length of that prison sentence –*

Downing: *I understand.*

Trial Court: -- which is what part of the Pre-Sentence Investigation is all about.

Downing: *Yes.*

Trial Court: I want to make sure you understood that.

Downing: *I do, yes.*

* * *

Trial Court: * * *   When the Court believes that a prison sentence is an appropriate disposition*, the law requires the Court to impose a definite term, so I have to pick one of the numbers, and the person does that sentence.*

(Emphasis added.) Plea Hearing Tr. 17-20.

**{¶ 39}** While the trial court did not explicitly inform Downing that it was not bound by the sentencing recommendation made by the State, a review of the entire plea colloquy, the Rule 11 Notification and Waiver, and the plea agreement signed by the parties indicates that Downing knew at the time he changed his pleas that (1) the court was not required to follow the State's recommendation as to sentence and (2) Downing faced a potential maximum sentence of 16 years in prison and 270 days in local jail. Accordingly, we find that Downing's guilty pleas were made knowingly, intelligently, and voluntarily.

**{¶ 40}** Finally, we note that Downing attempts to invoke the "Rule of Lenity" in support of his argument.   The "rule of lenity" is codified in R.C. 2901.04(A), which

provides that sections of the Revised Code that define penalties "shall be strictly construed against the State, and liberally construed in favor of the accused." The rule of lenity is a principle of statutory construction that provides that a court will not interpret a criminal statute so as to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous. *See Moskal v. United States*, 498 U.S. 103, 107-108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990), quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), quoting *Lewis v. United States*, 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (" 'the "touchstone" of the rule of lenity "is statutory ambiguity" ' "). Under the rule, ambiguity in a criminal statute is construed strictly so as to apply the statute only to conduct that is clearly proscribed*. United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). "Absent ambiguity, the rule of lenity is not applicable to guide statutory interpretation." *United States v. Johnson*, 529 U.S. 53, 59, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). We find Downing's reliance on the rule of lenity to be misplaced, since there is no statutory interpretation at issue in this assignment of error.

{¶ 41} Downing's final assignment of error is overruled.

{¶ 42} All of Downing's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Marcy A. Vonderwell
Erik R. Blaine
Hon. Stephen Wolaver